**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CV 06 1133

————————————————————————x

STATE OF NEW YORK and DENISE M. SHEEHAN,
as Commissioner of the New York State
Department of Environmental Conservation,

FEUERSTEIN, J.

Plaintiffs,

**COMPLAINT**

-against-

ORENSTEIN, M.J.

NEXT MILLENNIUM REALTY, LLC, 101 FROST
STREET ASSOCIATES, L.P., 101 FROST STREET
CORPORATION, EMILY SPIEGEL and
JERRY SPIEGEL,

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

Defendants.

★ MAR 13 2006 ★

————————————————————————x

BROOKLYN OFFICE

The State of New York and Denise M. Sheehan, as Commissioner of the New York State

Department of Environmental Conservation (DEC), by their attorney, Eliot Spitzer, Attorney General

of the State of New York, allege as follows:

<u>PRELIMINARY STATEMENT</u>

1.   This action is brought pursuant to the Comprehensive Environmental Response,

Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, and New York's common

law of public nuisance, indemnification and restitution to recover costs that have been or will be

incurred by the State in responding to the release and threatened release of hazardous substances at

or from three facilities that form part of the New Cassel Industrial Area (NCIA) in North Hempstead,

Nassau County, New York, and to redress harm to the public health and environment of the State

resulting from the defendants' acts and omissions at the three facilities (the NCIA Sites).

2.   The three separate manufacturing and commercial facilities are a portion of the 170-acre

industrial and commercial NCIA complex, which is bounded by the Long Island Railroad, Frost

Street, Old Country Road and Grand Boulevard. Hazardous substances, released from each of the three facilities as a result of the disposal of hazardous substances at each facility, have contaminated the soil and groundwater at and in the vicinity of each facility. They have commingled and formed a plume of pollutants that has contaminated the nearby Bowling Green drinking water supply, and have threatened the public health and the environment. Defendants are current owners and/or operators of the three NCIA Sites and the successors to the entities that owned or operated the Sites at the time of disposal.

3. Plaintiffs seek judgment:

(a) requiring defendants to complete the abatement and remediation of groundwater contamination emanating from each facility, including the contamination in and around the Bowling Green public water supply;

(b) directing reimbursement to plaintiff State of its past, present, and future costs in responding to such contamination;

(c) compensating for damages to the natural resources of the State, including costs of assessing such damages; and

(d) awarding enforcement costs and interest.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to §§ 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. § 1331, and has supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

5.   Venue is proper in this District pursuant to § 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the facilities are located, the claims arose and the threatened and actual releases of hazardous substances have occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Parties

6.   Plaintiff State of New York, as a body politic and sovereign entity, brings this action on behalf of itself and as parens patriae, trustee, guardian, and representative on behalf of all residents and citizens of the State, particularly those individuals who live in the vicinity of the NCIA Sites.

7.   Plaintiff Denise M. Sheehan, as Commissioner of DEC and Trustee of the State's natural resources, brings this action pursuant to § 107(f)(2)(b) of CERCLA, 42 U.S.C. § 9607(f)(2)(b), to recover damages for injury to, or loss of the State's natural resources.

8.   Upon information and belief, Defendant Next Millennium Realty, LLC (Millennium) is a limited liability company organized and existing under the laws of the State of New York with its principal place of business located at 375 North Broadway, Jericho, New York.  Millennium is the current owner of properties within the NCIA located at 89 Frost Street and at 770 Main Street, North Hempstead, New York (also known as the former Applied Fluidics facility), and, on information and belief, is the organizational successor to the party or parties who owned the properties at the time of disposal of hazardous substances.  The facilities are indicated on a map of the NCIA attached hereto as Appendix A.

9.   Upon information and belief, Defendant 101 Frost Street Associates, L.P. (Frost Assoc.) is a limited partnership formed under the laws of the State of New York with a principal place of business located at 375 North Broadway, Jericho, New York.  Frost Assoc. is the current owner of

the property located at 101 Frost Street, North Hempstead, New York (also known as the former Autoline Automotive facility) and, on information and belief, is the organizational successor to the party or parties who owned the property at the time of the disposal of hazardous substances.

10.  Upon information and belief, Defendant 101 Frost Street Corporation (Frost Corp.) is a corporation organized under the laws of the State of New York with a principal place of business located at 375 North Broadway, Jericho, New York.  Frost Corp. is a member and general partner of Frost Assoc., and, on information and belief, is an organizational successor to the party or parties who owned the property at the time of the disposal of hazardous substances.

11.  Upon information and belief, Emily Spiegel and Jerry Spiegel are officers and/or directors of Frost Corp., which is a member and general partner of Frost Assoc., and are managing members of Millennium.

12.  Upon information and belief, Emily Spiegel and Jerry Spiegel were actively involved in decision-making with regard to the management and operations of Frost Assoc. and Millennium and their organizational predecessors, and were actively involved in decision-making regarding compliance with environmental regulations at each of the facilities.

### Environmental Conditions at the NCIA

13.  The NCIA is an approximately 170-acre industrial and commercial area that includes numerous facilities, including the three that are the subject of this action.

14.  The NCIA is located over a sole-source aquifer identified by the U.S. Environmental Protection Agency.  Groundwater underlies the Sites at a depth of approximately 60 feet, and two public water supply wells are located approximately 1,500 feet downgradient of the NCIA.

-4-

15.   The NCIA was first developed during the early 1950s, and past industrial activities conducted within the NCIA have resulted in extensive contamination of groundwater at the NCIA by volatile organic compounds (VOCs).

16.   Based upon an investigation conducted by the Nassau County Department of Health, which indicated the presence of VOCs in the groundwater, DEC placed the entire NCIA on the New York State Registry of Inactive Hazardous Waste Disposal Sites (the Registry) in August 1988.

17.   DEC contracted with Lawler, Matusky & Skelly Engineers (LMS) to conduct Preliminary Site Assessments (PSAs) to identify sources of groundwater contamination and potentially responsible parties.  In March 1995, DEC delisted the NCIA as a whole and listed seven individual properties within the NCIA as Class 2 sites based upon a PSA completed in February 1995 (1995 PSA).  Sites are listed on the Registry as Class 2 if they contain hazardous wastes that pose a significant threat to public health or the environment.  LMS conducted additional PSAs in 1996 (1996 PSA), 1997 (1997 PSA), and 1998 (1998 PSA), as a result of which DEC listed additional properties within the NCIA as Class 2 sites, including but not limited to the 101 Frost Street facility, the 770 Main Street facility, and the 89 Frost Street facility.

18.   DEC adopted a three-prong strategy in remediating Class 2 sites in the NCIA. The first action identified on-site source areas of contamination at each site and selected appropriate remedial actions. The second action investigated on-site groundwater contamination at and beneath each site and selected appropriate remedial actions. The third action investigated off-site groundwater contamination that is migrating from the Class 2 sites in the NCIA, including groundwater contamination adversely affecting the Bowling Green public water supply, and selected appropriate remedial actions.

**Operations and Environmental Conditions at the Individual Facilities**

Facility at 89 Frost Street

19.   The 89 Frost Street facility, Inactive Hazardous Waste Disposal Site No. 1-30-043-L, is currently paved.   A 55,000-sq. ft. structure, which was built in 1968 and later demolished, formerly occupied the site and was used for, *inter alia*, manufacturing of adhesive tape and music amplifiers.

20.   Upon information and belief, the property is currently owned and/or operated, and was owned and/or operated at the time of the disposal of hazardous substances, by Emily Spiegel, Jerry Spiegel and Millennium, or its organizational predecessor.

21.   In 1998, a Remedial Investigation/Feasibility Study (RI/FS) was conducted at the site. The RI report was finalized in August 1999, and the investigation determined that the VOC contaminants of concern were perchloroethylene (PCE) and trichloroethylene (TCE).  In March 2000 DEC issued a Record of Decision (ROD) that described the selected remedy for the contaminated soils found at the site.   The remedy consisted of excavation and off-site disposal of the surface soils from hot spots, removal of contaminated soil and sediment from ten on-site dry wells, and treatment of deep soil contamination with a soil vapor extraction system (SVE) system.

22.   DEC has determined that the disposal activities at various NCIA sites, including the 89 Frost Street facility, have resulted in the discharge of various hazardous substances, including trichloroethane (TCA), PCE and TCE, and that these hazardous substances have migrated to the Bowling Green public water supply, and contaminated that water supply.

-6-

Facility at 770 Main Street

23.  The 770 Main Street facility, Inactive Hazardous Waste Disposal Site No. 1-30-043-M, is approximately one acre, and is currently occupied by a department store built in 1998.  The rest of the site is paved.  Applied Fluidics, Inc. occupied this site from 1974 to 1982.  Applied Fluidics was a defense contractor that manufactured research instruments and leak detectors.  The company used, *inter alia*, TCE, paint thinners and petroleum distillates.  The building was demolished in 1998. The site was excavated to a depth of 20 ft. below ground surface as part of its redevelopment.

24.  Upon information and belief, the site is currently owned and/or operated and was owned and/or operated at the time of the disposal of hazardous substances by Millennium or its organizational predecessor.

25.  In 1998, an RI/FS was conducted at the site.  The investigation determined that the VOC contaminants of concern were PCE and related contaminants.  In March 2000, DEC issued a no-action ROD for the soils, because Emily Spiegel, Jerry Spiegel, and Millennium had, on information and belief, already excavated the contaminated soils, albeit without oversight or authorization from DEC.

26.  DEC has determined that the disposal activities at various NCIA sites, including the 770 Main Street facility, have resulted in the discharge of various hazardous substances, including TCA, PCE and TCE, and that these hazardous substances have migrated to the Bowling Green public water supply, and contaminated that water supply.

Facility at 101 Frost Street

27.  The 101 Frost Street facility, Inactive Hazardous Waste Disposal Site No. 1-30-043-I, is approximately one acre, most of which is occupied by a one-story building.  The rest of the site

-7-

is paved.  Several tenants occupied the building at this site including a toy warehouse, a home laboratory supply company, a textiles manufacturer and an automobile ignition parts manufacturer. National Bassen Textiles, which occupied the property from 1974 to 1983, used degreasers and other chemicals.  Autoline Automotive Inc. occupied the site from 1984 to 1992, manufacturing ignition wires and wire harness sets.

28.  Upon information and belief, the site is currently owned and/or operated and was owned and/or operated at the time of the disposal of hazardous substances by  Emily Spiegel, Jerry Spiegel, and Frost Assoc., or its organizational predecessor.

29.  In 1998, an RI/FS was conducted at the site. The investigation determined that the VOC contaminants of concern were PCE, TCE, and xylene. Based on the FS, in March 2000 DEC issued a ROD  that described the selected remedy for the contaminated soils found at the site.  The remedy consisted of excavation and off-site disposal of the surface soils from hot spots, removal of contaminated soil and sediment from ten on-site dry wells, and treatment of deep soil contamination with a SVE system.

30.  DEC has determined that the disposal activities at various NCIA sites, including the 101 Front Street facility, have resulted in the discharge of various hazardous substances, including TCA, PCE and TCE,  and that these hazardous substances have migrated to the Bowling Green public water supply, and contaminated that water supply.

## On-Site and Off-Site Groundwater Contamination

31.  As to the on-site groundwater, the 1998-99 RI/FS determined that groundwater at the three sites at issue here - the 89 Frost Street facility, the 770 Main Street facility, and the 101

Frost Street facility- commingles, and the contamination from each site mixes with the contamination from the adjacent sites forming a common plume of VOC contamination.

32.   Based on the FS, in March 2000, DEC issued a groundwater ROD for all three sites that requires the installation of an air sparging/soil vapor extraction (AS/SVE) system to address VOC contamination in the groundwater source areas and an in-well vapor stripping system to address the deeper contamination along Old Country Road.

33.   As to the off-site groundwater contamination, DEC conducted an area-wide RI/FS and in 2003 issued a ROD for the off-site groundwater contamination that is migrating from the Class 2 sites in the NCIA.  The ROD requires the remediation of three contaminant plumes, the Western, Central, and Eastern plumes, in the upper and lower portions of the aquifer with in-well vapor stripping treatment systems.

34.  In November 2005, to facilitate implementation of the remedy selected in the ROD by the responsible parties, DEC issued an Explanation of Significant Differences that separates surface sites into two distinct groups: those  Class 2 sites located in the areas of origin of the Eastern and Central plumes, and those located in the area of origin of the Western plume.

**FIRST CAUSE OF ACTION**
**Defendants Millennium, Emily Spiegel, and Jerry Spiegel**
**CERCLA**

35.   Each of the properties at 89 Frost Street and 770 Main Street constitutes a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

36.   On information and belief, Defendants Millennium, Emily Spiegel, and Jerry Spiegel are the current owners and/or operators of the 89 Frost Street and the 770 Main Street facilities, and are the successors to the owner and/or operator at the time of disposal of hazardous

substances at those facilities, within the meaning of CERCLA §§ 107(a) and 101(20)(A), 42

U.S.C. §§ 9607(a) and 9601(20)(A).

37.   "Hazardous substances," as defined by CERCLA § 101(14), 42 U.S.C. § 9601(14),

have been released into the environment at and from the 89 Frost Street and the 770 Main Street

facilities, within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C.

§ 9601(22).

38.   The release or threatened release of hazardous substances has caused and is causing

contamination of the environment, including soil and groundwater on and around the 89 Frost

Street and the 770 Main Street facilities, and groundwater off-site in and around the Bowling

Green public water supply.

39.   The release or threatened release of hazardous substances from the 89 Frost Street

and the 770 Main Street facilities into the environment has caused and is causing injury to,

destruction of and/or loss of the natural resources of the State, within the meaning of CERCLA

§§101(16) and 107(a), 42 U.S.C. §§ 9601(16) and 9607(a).

40.   The release or threatened release of hazardous substances from the 89 Frost Street

and the 770 Main Street facilities into the environment has caused the State to undertake

response actions, within the meaning of CERCLA §101(25), 42 U.S.C. § 9601(25), in

accordance with the National Oil and Hazardous Substances Pollution Contingency Plan, 40

C.F.R. Part 300 (the "National Contingency Plan").

41.   The release or threatened release of hazardous substances from the 89 Frost Street

and the 770 Main Street facilities into the environment has caused the State to incur response

costs, within the meaning of CERCLA §§ 101(25) and 107, 42 U.S.C. §§ 9601(25) and 9607, and continues and will continue to cause the State to incur response costs in the future.

42.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel are strictly, jointly and severally liable for completion of the remediation of the off-site groundwater plumes, the past, present, and future response costs incurred and to be incurred by the State, in responding to releases of hazardous substances at the 89 Frost Street and the 770 Main Street facilities, including the costs of investigating and remediating the off-site groundwater contamination in and around the Bowling Green public water supply.

43.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel are strictly, jointly and severally liable under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), to the State for all damages or injury to, destruction, or loss of the natural resources of the State, and for all reasonable costs of assessing such injury, destruction or loss resulting from the disposal and release of hazardous substances at the 89 Frost Street and 770 Main Street facilities.

## SECOND CAUSE OF ACTION
### Millennium, Emily Spiegel and Jerry Spiegel
### Public Nuisance

44.  Hazardous substances have been released into the environment at and from  the 89 Frost Street and the 770 Main Street facilities and off-site in and around the Bowling Green public water supply.

45.  Conditions at and around the 89 Frost Street and 770 Main Street facilities constitute a continuing and substantial threat to public health and the environment, and a public nuisance.

46.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel created and/or contributed to, the creation of a public nuisance at the facilities and off-site in and around the Bowling Green public water supply.

47.  Defendants  Millennium, Emily Spiegel, and Jerry Spiegel maintained a public nuisance at the facilities and off-site in and around the Bowling Green public water supply.

48.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel are jointly and severally liable for the creation and maintenance of a public nuisance at each of the facilities and off-site in and around the Bowling Green public water supply.

49.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel have failed to abate the public nuisance at the facilities and off-site.

50.  As a result of the public nuisance described herein, the State has expended and will in the future expend large sums of money for abatement of the nuisance.

51.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel are jointly and severally liable to the State under the common law of public nuisance and the Real Property and Proceedings Law § 841 for the public nuisance described herein and to abate such nuisance and/or for all costs of the State to abate such public nuisance.

### THIRD CAUSE OF ACTION
**Millennium, Emily Spiegel and Jerry Spiegel**
**Restitution**

52.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel had and have a duty to abate the public nuisance that exists in and around the 89 Frost Street and the 770 Main Street facilities and off-site at and around the Bowling Green public water supply, and to remediate the contamination.

-12-

53.   Defendants Millennium, Emily Spiegel, and Jerry Spiegel have failed to abate such public nuisance and remediate such contamination.

54.   The State has discharged and will continue to discharge the duty of Defendants Millennium, Emily Spiegel, and Jerry Spiegel to abate this nuisance.

55.   By discharging Defendants' duty to abate the nuisance, the State has conferred a benefit upon Defendants Millennium, Emily Spiegel, and Jerry Spiegel.

56.   Defendants Millennium, Emily Spiegel, and Jerry Spiegel are being unjustly enriched by virtue of the State's discharge of Defendants' duty.

57.   Defendants Millennium, Emily Spiegel, and Jerry Spiegel are liable to the State in restitution for the value of the benefit conferred by the State.

### FOURTH CAUSE OF ACTION
### Millennium, Emily Spiegel and Jerry Spiegel
### Indemnification

58.   Defendants Millennium, Emily Spiegel, and Jerry Spiegel currently have, and previously had, an obligation to the State and the public at large to investigate and remediate the release and/or the threatened release of hazardous substances at and from the 89 Frost Street and the 770 Main Street facilities and off-site in and around the Bowling Green public water supply. Such obligation includes the duty to conduct necessary environmental studies, to eliminate the release and/or the threatened release of hazardous substances, and to monitor the 89 Frost Street and the 770 Main Street facilities and off-site in and around the Bowling Green public water supply to ensure that corrective measures are adequate to protect the public health and the environment.

59.  Defendants Millennium, Emily Spiegel, and Jerry Spiegel did not investigate, design or implement the remedy for the groundwater contamination migrating off-site in and around the Bowling Green public water supply; nor have Defendants investigated the facilities and off-site in and around the Bowling Green public water supply.

60.  The State has performed and will in the future perform duties and obligations owed by the Defendants Millennium, Emily Spiegel, and Jerry Spiegel to investigate, remediate and monitor the facilities and off-site in and around the Bowling Green public water supply.

61.  The actions taken and costs incurred by the State were necessary to ensure the health, safety and welfare of the public and to protect the environment of the State.

62.  The Defendants Millennium, Emily Spiegel, and Jerry Spiegel have been and will be unjustly enriched by the performance by the State of duties and obligations of the Defendants.

63.  The Defendants Millennium, Emily Spiegel, and Jerry Spiegel are liable to the State for the indemnification of all expenses and costs incurred by the State in performing the Defendants' duties and obligations at the 89 Frost Street and the 770 Main Street facilities and off-site in and around the Bowling Green water supply, including but not limited to the cost of investigation, remediation, monitoring, oversight, enforcement, and interest.

### FIFTH CAUSE OF ACTION
**Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel
CERCLA**

64.  The property at 101 Frost Street  constitutes a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

65.  On information and belief, Defendants Frost Assoc., Frost Corp., Jerry Spiegel and Emily Spiegel are the current owners and/or operators of the 101 Frost Street facility, and are

-14-

successors to the owner and/or operators at the time of disposal of hazardous substances at the facility, within the meaning of CERCLA §§ 107(a) and 101(20)(A), 42 U.S.C. §§ 9607(a) and 9601(20)(A).

66. "Hazardous substances," as defined by CERCLA § 101(14), 42 U.S.C. § 9601(14), have been released into the environment at and from the 101 Frost Street facility, within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22).

67. The release or threatened release of hazardous substances has caused and is causing contamination of the environment, including soil and groundwater on and around the 101 Frost Street facility, and groundwater off-site, in and around the Bowling Green public water supply.

68. The release or threatened release of hazardous substances from the 101 Frost Street facility into the environment has caused and is causing injury to, destruction of and/or loss of the natural resources of the State, within the meaning of CERCLA §§ 101(16) and 107(a), 42 U.S.C. §§ 9601(16) and 9607(a).

69. The release or threatened release of hazardous substances from the 101 Frost Street facility into the environment has caused the State to undertake response actions, within the meaning of CERCLA §101(25), 42 U.S.C. § 9601(25), in accordance with the National Contingency Plan.

70. The release or threatened release of hazardous substances from the 101 Frost Street facility into the environment has caused the State to incur response costs, within the meaning of CERCLA §§ 101(25) and 107, 42 U.S.C. §§ 9601(25) and 9607, and continues and will continue to cause the State to incur response costs in the future.

71. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are strictly, jointly and severally liable for completion of the remediation of the off-site groundwater plumes, and the past and future response costs incurred and to be incurred by the State in responding to releases of hazardous substances at the 101 Frost Street facility, including the costs of investigating and remediating the off-site groundwater contamination in and around the Bowling Green public water supply.

72. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are strictly, jointly and severally liable under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), to the State for all damages or injury to, destruction, or loss of the natural resources of the State, and for all reasonable costs of assessing such injury, destruction or loss resulting from the disposal and release of hazardous substances at the 101 Frost Street facility.

## SIXTH CAUSE OF ACTION
### Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel
### Public Nuisance

73. Hazardous substances have been released into the environment at and from the 101 Frost Street facility and off-site in and around the Bowling Green public water supply.

74. Conditions at and around the 101 Frost Street facility constitute a continuing and substantial threat to public health and the environment, and a public nuisance.

75. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel created and/or contributed to, the creation of a public nuisance at the facility and off-site in and around the Bowling Green public water supply.

76. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel maintained a public nuisance at the facility and off-site in and around the Bowling Green public water supply.

77.  Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are jointly and severally liable for the creation and maintenance of a public nuisance at the facility and off-site in and around the Bowling Green public water supply.

78.  Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel have failed to abate the public nuisance at the facility and off-site in and around the Bowling Green public water supply.

79.  As a result of the public nuisance described herein, the State has expended and will in the future expend large sums of money for abatement of the nuisance.

80.  Defendants  Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are jointly and severally liable to the State under the common law of public nuisance and the Real Property and Proceedings Law § 841 for the public nuisance described herein and for all costs of the State to abate such public nuisance.

### SEVENTH CAUSE OF ACTION
**Frost Assoc., Frost Corp., Emily Spiegel and Jerry Spiegel**
**Restitution**

81.  Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel have and had a duty to abate the public nuisance that exists at and around the 101 Frost Street facility and off-site in and around the Bowling Green public water supply, and to remediate the contamination.

82.  Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel have failed to abate such public nuisance and remediate such contamination.

83.   The State has discharged and will continue to discharge Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel's duty to abate this nuisance.

84. By discharging Defendants' duty to abate the nuisance, the State has conferred a benefit upon Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel.

85. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are being unjustly enriched by virtue of the State's discharge of Defendants' duty.

86. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are liable to the State in restitution for the value of the benefit conferred by the State.

### EIGHTH CAUSE OF ACTION
**Frost Assoc., Frost Corp., Emily Spiegel and Jerry Spiegel**
**Indemnification**

87. Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel currently have, and previously had, an obligation to the State and the public at large to investigate and remediate the release of hazardous substances from the 101 Frost Street facility and off-site in and around the Bowling Green water supply. Such obligation includes the duty to conduct necessary environmental studies, to eliminate the release and/or the threatened release of hazardous substances and to monitor the 101 Frost Street facility and off-site in and around the Bowling Green water supply to ensure that corrective measures are adequate to protect the public health and the environment.

88. The Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel did not investigate, design or implement the remedy intended to eliminate the release and threatened release for the groundwater contamination off-site in and around the Bowling Green water supply; nor has Defendant investigated the 101 Frost Street facility and off-site in and around the Bowling Green water supply.

89.  The State has performed and will in the future perform duties and obligations owed by the Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel to investigate, remediate and monitor the 101 Frost Street facility and off-site in and around the Bowling Green water supply.

90.  The actions taken and costs incurred by the State were necessary to ensure the health, safety and welfare of the public and to protect the environment of the State.

91.  The Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel have been and will be unjustly enriched by the performance by the State of duties and obligations of the Defendants.

92.  The Defendants Frost Assoc., Frost Corp., Emily Spiegel, and Jerry Spiegel are liable to the State for the indemnification of all expenses and costs incurred by the State in performing Defendants' duties and obligations at the 101 Frost Street facility and off-site in and around the Bowling Green water supply, including but not limited to the cost of investigation, remediation, monitoring, oversight, enforcement, and interest.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment in their favor and against each Defendant as follows:

1.  Directing defendants to complete the abatement and remediation of groundwater contamination emanating from each facility including the off-ste groundwater contamination in and around the Bowling Green public water supply;

2.  Declaring each defendant to be jointly and severally liable to the State for and directing each defendant to pay, all past, present, and future costs and expenses, including

interest, attorney fees and other costs of enforcement, incurred by the State in responding to the release or threatened release of hazardous substances at each of the facilities at which the defendant is an owner and/or operator, and for the off-site groundwater contamination in and around the Bowling Green public water supply;

3. Directing each defendant to pay natural resources damages, including costs of assessment, caused by the release of hazardous substances from its facility or facilities;

4. Ordering payment of enforcement costs, interest, and such other and further relief as is just and proper.

Dated: New York, New York
        March 13, 2006

                                ELIOT SPITZER
                                Attorney General of the State
                                of New York
                                Attorney for Plaintiffs

                                By: _____

                                JEANNA E. HUSSEY (JH8437)
                                ROBERT EMMET HERNAN (RH-2652)
                                Assistant Attorneys General
                                New York State Department
                                   of Law
                                Environmental Protection
                                   Bureau
                                120 Broadway. 26th Fl.
                                New York, New York  10271
                                (212) 416-8455

Of Counsel:
        Alali Tamuno, Esq.
        Division of Environmental Enforcement
        New York State Department of Environmental Conservation
        NYS Dept of Env. Conservation
        100 Hillside Avenue, Suite 1W
        White Plains, New York 10603-2860
        (914) 332-1835

APPENDIX A



Former Autoline Automotive
(130043 I)

89 Frost Street
(130043 L)

Former Applied Fluidics
(130043 M)

Utility Manufacturing
(130043 H)

NCIA Site Locations
Figure 2
NEW CASSEL INDUSTRIAL AREA
NYSDEC I.D. No. 130043
LAWLER, MATUSKY & SKELLY ENGINEERS    LLP
Pearl River, New York

Arkwin Industries
(130043 D)

Tishcon Corp
at Brooklyn Avenue
(130043 E)

Tishcon Corp
at 29 New York Avenue
(1330043 V)

1000 ft

APPROXIMATE SCALE IN FEET

0

GROUNDWATER DIRECTION

Former LAKA Industries
(130043 K)

118-138 Swalm Avenue
(130043 P)

N.E. Corner
Hopper & Main Street
(130043 T)

299 Main Street
(130043 S)

Atlas Graphics
(130043 B)

IMC Magnetics
(130043 A)